IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ATTICUS CORPORATION, HANNAH C. PAKULA, and BOARDWALK PRODUCTIONS,<br><br>Petitioners,<br><br>v.<br><br>TONJA B. CARTER, as Personal Representative of the Estate of NELLE HARPER LEE, and HARPER LEE LLC, a limited liability company,<br><br>Respondents. | CASE NO. 22-cv-59 |

## PETITION TO CONFIRM
## FINAL ARBITRATION AWARD

Petitioners Atticus Corporation ("Atticus"), Hannah C. Pakula and Boardwalk Productions ("Boardwalk") (collectively, "Petitioners" or "Producers") respectfully submit their Petition to Confirm Arbitration Award against Respondents Tonja C. Carter, as Personal Representative of the Estate of Nelle Harper Lee, and Harper Lee, LLC, alleging further as follows:

### PRELIMINARY STATEMENT

1.  This is a Petition to Confirm Final Arbitration Award under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.

47166468 v3

2. Petitioners seek an order from this Court under FAA 9 U.S.C. § 9, confirming the Final Arbitration Award Upon Consent of the Parties ("Final Award") dated January 20, 2022, rendered in an arbitration before the American Arbitration Association and its duly appointed Arbitrator Richard H. Silberberg, Esq., and entry of judgment thereon pursuant to 9 U.S.C. § 13.

## PARTIES

3. Petitioner Atticus Corporation is a corporation organized and existing under the laws of the State of California, with its principal place of business located in the State of California.

4. Petitioner Hannah C. Pakula is a citizen of the State of New York.

5. Petitioner Boardwalk Productions is a corporation organized and existing under the laws of the State of California, with its principal place of business in the State of California.

6. Respondent Tonja B. Carter is a citizen of the State of Alabama, and is the duly-appointed representative of the Estate of Nelle Harper Lee.

7. Respondent Harper Lee, LLC, is a limited liability company organized under Alabama law, and its sole member is the Estate of Nelle Harper Lee.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because Petitioners and Respondents are citizens of

47166468 v3

different states and the amount in controversy exceeds the sum of $75,000, excluding interest and costs. Additionally this Court has subject matter jurisdiction in that the subject Final Award for which confirmation is sought involved the interpretation and application of the 1976 Copyright Act, 17 U.S.C. §304(c)(6)(E), to the grant of certain rights in the late Harper Lee's literary works, the monetary value of which also exceed $75,000.

9. This Court has personal jurisdiction over Respondent Carter because she is a resident in this District and is the Personal Representative for the Estate of Nelle Harper Lee, pending in the Probate Court of Monroe County, Alabama, which is also situated in this District. This Court has personal jurisdiction over Harper Lee, LLC, as its sole member is the Estate of Nelle Harper Lee which is the subject of a probate proceeding before the Probate Court of Monroe County, Alabama, which is within this District, and as Respondent Carter is the Personal Representative for such Estate. The exercise of jurisdiction over the parties will not violate due process because the Final Award and the Parties' underlying Settlement Agreement both expressly provide for this confirmation action to be filed within this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because, as stated above, the Final Award and the Parties' underlying Settlement Agreement (incorporated within the Final Award) both expressly

provide for this confirmation action to be filed within this District, and the Respondent and the pertinent probate estate are residents of this District.

## FACTS

11. Petitioners are the successors to Robert Mulligan, Alan J. Pakula and Gregory Peck (collectively, the "Creators" or "Producers"), who together directed, produced, and/or starred in the acclaimed motion picture "To Kill a Mockingbird" (the "TKAM Motion Picture"), which was released in December 1962. Messrs. Mulligan and Pakula agreed to produce the TKAM Motion Picture following negotiations with Nelle Harper Lee ("Ms. Lee"), author of the famous novel published in 1960, "To Kill a Mockingbird" ("TKAM Novel") (collectively with the "TKAM Motion Picture," "TKAM") as described in a 1961 Motion Picture Option Agreement between Messrs. Mulligan and Pakula on one hand and Ms. Lee on the other (the "1961 Agreement"). Ms. Lee and the Producers are hereinafter referred to as "the Parties".

12. In the 1961 Agreement, executed on April 3, 1961, Ms. Lee granted Messrs. Mulligan and Pakula certain rights with regard to the TKAM Novel and the TKAM Motion Picture, including certain rights regarding any TKAM sequel that Ms. Lee might write or publish.

13. On or about June 4, 2008, Ms. Lee executed and served on the Petitioners a "Notice of Termination of Transfer" that sought to exercise United States Copyright termination rights pursuant to 17 U.S.C. §304(c) with

respect to the 1961 Agreement as amended (the "2008 Termination Notice"). On the same day, Ms. Lee also executed a "Grant of Certain Literary Property Rights in Novel" to the Producers (the "2008 Grant").

14.   On or about July 14, 2015, Lee through her publisher published a novel entitled "Go Set A Watchman," U.S. copyright registration number TX0008083672 ("GSAW"), with Lee as the original copyright claimant, which, inter alia, features many of the characters and themes from TKAM later in life.

15.   On or about July 14, 2015, Lee also executed and served a second "Notice of Termination of Transfer" on Producers that again sought to terminate pursuant to 17 U.S.C. §304(c) the 1961 Agreement as amended (the "2015 Termination Notice").

16.   On or about August 24, 2015, Lee submitted to the American Arbitration Association and served on Producers a Demand for Arbitration designated Case No. 01 0004 7377 (the "Arbitration Proceeding"), seeking a declaration that by reason of her 2015 Termination Notice, the Producers "do not own or otherwise possess any right to or interest in the TKAM Novel," or alternatively, that any such rights would terminate in 2017. Lee also sought a declaration that the Producers "do not own or otherwise possess any right to or interest in [Lee's] novel "Go Set a Watchman" ("Watchman")."

17.   On or about October 7, 2015, Producers submitted and served on Lee an Answer and Counterclaims in the Arbitration Proceeding.

5

18. On or about February 19, 2016, Lee died, and her interests in TKAM, GSAW and the Arbitration Proceeding passed to the Estate as Lee's successor-in-interest.

19. On or about February 29, 2016, the Will of Lee was filed for probate in the Probate Court of Monroe County, Alabama ("Lee's Will") and a Probate proceeding was initiated (the "Probate Proceeding") by which Tonja B. Carter ("Carter") was appointed as Personal Representative of Lee's estate. As of the date of this filing, Carter is serving as the duly-acting and qualified Personal Representative of Lee's Estate. Section 6.2 of Lee's Will defines "Literary Property" to include all rights, title and interest in and to novels TKAM and GSAW and any and all other literary works and properties of any kind and nature written or created by Lee, whether alone or in collaboration with others. Article 7, paragraph (14) of Lee's Will provides that, in the event any Literary Property is a part of Lee's probate estate, Lee's Personal Representative is specifically authorized to create an LLC of which Lee's probate estate is the sole owner and to contribute any part (or all) of Lee's Literary Property to such LLC. Pursuant to that authorization, Lee's Personal Representative in fact created such an LLC ("Harper Lee, LLC", hereinafter, "LLC"), and on or about April 25, 2016, contributed and assigned to the LLC, inter alia, Lee's and the Estate's interests in the rights that are the subject of the Arbitration Proceeding.

47166468 v3

20. On June 18, 2018, the arbitrator in the Arbitration Proceeding issued a Partial Final Award in which, *inter alia*, he ruled that the 2008 Grant superseded and replaced the grants made by Lee to the Producers in the 1961 Agreement as amended, and that the 2008 Grant conveyed certain rights in TKAM to the Producers. Further issues were outlined for continued proceedings if the Parties to the Arbitration Proceeding so desired.

21. Following issuance of the Partial Final Award in June 2018, the Parties engaged in settlement negotiations, and eventually agreed to settle all claims submitted to the Arbitration Proceeding through an agreement reached on December 23, 2021. The Settlement Agreement expressly provided that the Agreement itself, along with the earlier Partial Final Award, would constitute the Final Arbitration Award.

22. Attached hereto as Exhibit A is a true and correct copy of the 1961 Agreement, which contains the arbitration agreement between the parties. (See Paragraph 18)

23. Attached hereto as Exhibit B is a true and correct copy of the American Arbitration Association's Notice of Appointment of Arbitrator, November 17, 2015, appointing Richard H. Silberberg, Esq.

24. Attached hereto as Exhibit C is a true and correct copy of the Partial Final Award, issued on June 18, 2018.

47166468 v3

25. Attached hereto as Exhibit D is a true and correct copy of the Final Arbitration Award Upon Consent of the Parties issued by the American Arbitration Association and the Arbitrator, dated January 20, 2022, expressly incorporating the Settlement Agreement[1] of the Parties dated December 23, 2021 and the Partial Final Award, as collectively constituting the Final Award. The 2008 Grant is included as Exhibit 2 to the Final Award.

26. The Final Arbitration Award Upon Consent of the Parties has not been vacated under 9 U.S.C. § 10, or modified or corrected under 9 U.S.C. § 11.

27. Petitioners, under 9 U.S.C. § 9, have brought this Petition within one year of the date of the Arbitration Award, which was made on January 20, 2022.

## COUNT ONE

**(Confirm Arbitration Award and Enter Judgment under the Federal Arbitration Act)**

28. Petitioners incorporate by reference paragraphs 1–27 above, as if fully set forth within.

---

[1] The Final Award Upon Consent of the Parties, incorporating the Settlement Agreement between the Parties and the Partial Final Award is filed herewith with the amount of the actual settlement payment redacted in Paragraph 6 for reasons of confidentiality. A motion to file the unredacted Settlement Agreement under seal is being filed contemporaneously with this Petition.

47166468 v3

29. The Federal Arbitration Act (FAA) applies whenever there is, as in this case, a "written provision in ... a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy arising out of such contract ...." 9 U.S.C. § 2.

30. Petitioners and Respondent's arbitration agreement is found in attached Exhibit A, Paragraph 18. The written arbitration agreement is in a contract involving interstate commerce because the subject of the agreement involved copyrights, film production, services, and related payments which flowed across state lines in the performance of the contract. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995); *Elizabeth Homes, L.L.C. v. Gantt*, 882 So.2d 313, 315–17 (Ala. 2003).

31. The FAA governs confirmation of arbitration awards in federal court. 9 U.S.C. § 9.

32. "Judicial review of arbitration awards is 'narrowly limited' and the FAA presumes that arbitration awards will be confirmed." *Gianelli Money Purchase Plan & Tr. v. ADM Inv. Servs., Inc.,* 146 F.3d 1309, 1312 (11th Cir. 1998).

33. Section 9 of the FAA expressly provides that a motion to confirm must be granted "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. 9 U.S.C § 9. No such vacation, modification, or correction has occurred.

34. In the Final Award incorporating the Partial Final Award and the Settlement Agreement between the Parties, the Arbitrator ruled that the 2008 Grant superseded and replaced the grants made by Lee to the Producers in the 1961 Agreement as amended. The Arbitrator further determined that the 2008 Grant conveyed certain rights in TKAM to the Producers, as set forth in more detail below.

35. The Final Award, through the Settlement Agreement, includes, *inter alia,* express acknowledgement by the Parties of the following Grant of Rights:

> a. The Lee Estate and the LLC acknowledge that the 2008 Grant granted the Producers all rights, solely and exclusively, including U.S. Copyright for the life of the copyright (including all renewals and extensions thereof), in and to TKAM, of any kind or nature, in any and all media now or hereafter known or devised throughout the universe, and all parts and elements thereof, including without limitation, the narrative, dialog, incidents, descriptions, characters, storyline and plot, except for those rights reserved by the Estate and LLC. The foregoing rights include the right to create derivative works of TKAM, and the right to "age" the characters in TKAM backward and forward in any such derivative work, subject to the rights set forth in Sections 1.3, 1.4, and 1.6 of the Settlement Agreement, and to the extent that such derivative works do not use any separately copyrightable elements held by the Estate or LLC.
>
> b. The Producers may exercise or use (or elect to refrain from exercising or using, in the Producers' sole discretion) any one or more of such rights, licenses, privileges and property granted or conveyed to the Producers by the 2008 Grant, as clarified in the Settlement Agreement.
>
> c. The Producers acknowledge that under the 2008 Grant the Estate or LLC retain the following rights in TKAM, solely and exclusively, throughout the universe, and all parts and elements thereof, including without limitation, the narrative, dialog, incidents,

descriptions, characters, storyline and plot: (a) the rights to publication in print media, which includes but is not limited to e-book media, audio-only book media, and other forms of media that reproduce the text only of the written work, either now or hereafter known or devised throughout the universe; (b) the "live" television rights; (c) the radio rights whereby only a single person reads all or a portion of TKAM for broadcast in any territory of the world outside the United States and Canada and their respective territories and possessions; and (d) the rights to production and use upon the spoken stage with actors appearing in person in the actual presence of the audience. The Producers acknowledge that those rights include without limitation the rights to the stage production of TKAM that opened on Broadway in 2018, and any subsequent staging of that production, whether on Broadway or elsewhere upon the spoken stage with actors appearing in person in the actual presence of the audience. To the extent necessary, the Producers hereby grant to the Estate all such rights as set forth in Section 1.3 of the Settlement Agreement. Further, Producers acknowledge that, as between the Producers and the Estate and LLC, the Estate and LLC may retain all income and revenue of any kind that Lee or the Estate has received and may in the future receive from her or its exploitation of the rights described in Section 1.3 of the Settlement Agreement.

      d.     The Producers further acknowledge that under the 2008 Grant the Estate and LLC exclusively retain the right to publish, and authorize others to publish, GSAW in print media, which includes but is not limited to e-book media, audio-only book media, and other forms of media that reproduce the text only of the written work, either now or hereafter known or devised throughout the universe. The Producers further acknowledge that to the extent GSAW contains any separately copyrightable elements that are unique to GSAW and do not appear in TKAM, all rights to those elements of any kind or nature, including but not limited to rights protected by U.S. copyright for the life of the copyright (including all renewals and extensions thereof), are exclusively retained by the Estate or LLC. Further, Producers acknowledge that, as between the Producers and the Estate, the Estate may retain all income and revenue of any kind that Lee or the Estate has received and may in the future receive from her or its exploitation of the rights described in Section 1.4 of the Settlement Agreement.

      e.     The Estate and LLC acknowledge that to the extent copyrightable elements (including, without limitation, the narrative, dialog, incidents, descriptions, characters, storylines, and plot) of TKAM

also appear in GSAW, all rights to those elements are exclusively owned by the Producers under the 2008 Grant, subject to the exceptions in Sections 1.3 and 1.4, and Section 1.6 of the Settlement Agreement.

      f.    The Estate and/or LLC may exercise or use (or elect to refrain from exercising or using, in their sole discretion) any one or more of such rights, licenses, privileges and property reserved to the Estate and/or LLC by the 2008 Grant, as clarified in the Settlement Agreement.

36.    The Settlement Agreement further provided for the payment of a Settlement Payment to be made by the Lee Estate to the Producers in an amount in excess of the jurisdictional amount in controversy required under 28 U.S. Code § 1332 (Final Award, Exhibit D hereto, Settlement Agreement [attached to Final Award as Exhibit 1], Paragraph 6)

37.    Finally, the Settlement Agreement in Paragraph 13 expressly provided that the Agreement itself and the Partial Final Award should constitute the Final Arbitration Award, subject to a consent confirmation as a judgment by this Court:

> **13. <u>Arbitration Award and Confirmation as Judgment</u>.** This Agreement and the Partial Final Award it references shall be the Final Arbitration Award rendered by the arbitrator in this arbitration. Once the arbitrator renders a Final Arbitration Award pursuant to this arbitration as provided herein, the Parties agree that at any time within one year after the award is made, any Party to the arbitration may apply to the United States District Court for the Southern District of Alabama for an order confirming the award pursuant to 9 U.S.C. § 9, and further agree that no Party will object to such confirmation of the arbitration award as a judgment. The Parties acknowledge that their mutual acceptance of this Agreement is conditioned on said arbitrator's entry of an arbitration award as described herein.

WHEREFORE, Petitioners respectfully request that this Court:

1. Enter an Order under 9 U.S.C. § 9 confirming the Final Arbitration Award Upon Consent of the Parties (Exhibit D), with incorporated exhibits, and the Partial Final Award (Exhibit C), both of which are filed herewith; and

2. Enter judgment thereon under 9 U.S.C. § 13.

Dated: February 9, 2022.

                                      Respectfully submitted,

                                      *s/ H. William Wasden*
                                      H. WILLIAM WASDEN
                                      (WASDH4276)
                                      *One of the Attorneys for Petitioners*

**OF COUNSEL**:
H. William Wasden
Burr & Forman LLP
11 North Water St., Suite 22200
Mobile, Alabama 36602
Telephone: (251) 344-5151
bwasden@burr.com

Mark S. Lee
Rimon PC
2029 Century Park East
Suite 400N
Los Angeles, CA 90067
Telephone: (310) 361-5776
mark.lee@rimonlaw.com
*To Be Admitted Pro Hac Vice*

*Service Instructions on Following Page*

47166468 v3

**Respondents to be served via certified mail as follows:**

Tonja B. Carter, as Personal Representative
of the Estate of Nelle Harper Lee
Post Office Box 278
Monroeville, AL 36461

Harper Lee LLC
By and through its Registered Agent
C T Corporation
2 North Jackson Street, Suite 605
Montgomery, AL 36104

47166468 v3