IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ATTICUS CORPORATION, *et al.*, ) | |
|     Petitioners, ) | |
| ) | |
| v. ) | CIVIL ACTION: 1:22-00059-KD-MU |
| ) | |
| TONJA B. CARTER, as Personal ) | |
| Representative of the **ESTATE OF NELLE** ) | |
| **HARPER LEE,** and **HARPER LEE, LLC,** a ) | |
| limited liability company, ) | |
|     Respondents. ) | |

ORDER

This matter is before the Court on a Petition to Confirm Arbitration Award under the *Federal Arbitration Act* 9 U.S.C. §§ 1-16, filed by Atticus Corporation, Hannah C. Pakula and Boardwalk Productions (Docs. 1, 6 (SEALED)); and the Response of Tonja B. Carter as Personal Representative of the Estate of Nelle Harper Lee and Harper Lee LLC (Doc. 15). The Petition is unopposed. (Doc. 15 at 2).

**I.      Background**

Petitioners Atticus Corporation (Atticus), Hannah C. Pakula (H. Pakula), and Boardwalk Productions (Boardwalk) seek an order from this Court under the *Federal Arbitration Act*, 9 U.S.C. § 9, to confirm the January 20, 2022 Final Arbitration Award upon the parties' consent, rendered in arbitration before the American Arbitration Association and its duly appointed Arbitrator Richard H. Silberberg, Esq. (Doc. 1-2), and entry of judgment thereon pursuant to 9 U.S.C. § 13. The Final Arbitration Award for which confirmation is sought involved the interpretation and application of the 1976 Copyright Act, 17 U.S.C. § 304(c)(6)(E), to grant certain rights in the late Nelle Harper Lee's literary works. (Doc. 1 at 3).

Petitioners are the successors to Robert Mulligan (Mulligan), Alan J. Pakula (A. Pakula) and Gregory Peck (Peck) (Creators/Producers), who together directed, produced, and/or starred in the December 1962 acclaimed motion picture "To Kill a Mockingbird" (the TKAM motion picture). (Id. at

1

4). Mulligan and Pakula agreed to produce the motion picture following negotiations with Nelle Harper Lee (Lee), author of the famous novel published in 1960 "To Kill a Mockingbird" (the TKAM novel) (collectively with the TKAM motion picture) as set out in an April 3, 1961 Motion Picture Option Agreement between Mulligan, Pakula, and Lee (the 1961 Agreement). (Id.; Doc. 1-1 (the 1961 Agreement)). Pursuant to the 1961 Agreement, Lee granted Mulligan and Pakula certain rights with regard to the TKAM novel and the TKAM motion picture, including certain rights regarding any TKAM sequel that Lee might write or publish. (Doc. 1 at 4).

On June 4, 2008, Lee executed and served on the Petitioners a "Notice of Termination of Transfer" that sought to exercise United States Copyright termination rights, pursuant to 17 U.S.C. § 304(c), with respect to the 1961 Agreement as amended (2008 Termination Notice). (Id. at 4). That same day, Lee executed a "Grant of Certain Literary Property Rights in Novel" to the Producers (2008 Grant). (Id. at 4-5). On July 14, 2015, Lee, through her publisher, published a novel entitled "Go Set A Watchman," U.S. copyright registration number TX0008083672 (the GSAW novel), with Lee as the original copyright claimant, which features many of the characters and themes from TKAM later in life. (Doc. 1 at 5). Also on this date, Lee executed and served a second "Notice of Termination of Transfer" on the Producers that sought to terminate, pursuant to 17 U.S.C. § 304(c), the 1961 Agreement as amended (2015 Termination Notice). (Id.) On August 24, 2015, Lee submitted to the American Arbitration Association and served on the Producers a Demand for Arbitration designated Case No. 01 0004 7377 (Arbitration Proceeding), seeking a declaration that by reason of her 2015 Termination Notice, the Producers "do not own or otherwise possess any right to or interest in the TKAM Novel;" or alternatively, that any such rights would terminate in 2017. (Id.) Lee also sought a declaration that the Producers "do not own or otherwise possess any right to or interest in [Lee's] novel "Go Set a Watchman" (GSAW novel). (Id.) On October 7, 2015, the Producers submitted and served on Lee an Answer and Counterclaims in the Arbitration Proceeding.

(Id.) On November 17, 2015, Silberberg was appointed as the arbitrator. (Doc. 1-2). On February 19, 2016, Lee died, and her interests in TKAM, GSAW, and the Arbitration Proceeding passed to the Estate as Lee's successor-in-interest. (Id. at 6).

On February 29, 2016, Lee's Will was filed in the Probate Court of Monroe County, Alabama (Lee's Will) and a Probate proceeding was initiated (Probate Proceeding) by which Tonja B. Carter (Carter) was appointed as Personal Representative of Lee's estate. (Doc. 1 at 6). Carter is serving as the duly acting and qualified Personal Representative of Lee's Estate. (Id.)

Pursuant to Lee's Will, Section 6.2 defines "Literary Property" to include all rights, title, and interest in and to the TKAM and GSAW novels, and any and all other literary works and properties of any kind and nature written or created by Lee, whether alone or in collaboration with others. (Doc. 1 at 6). Article 7, paragraph (14) of Lee's Will provides that in the event any Literary Property is a part of Lee's probate estate, Carter is specifically authorized to create an LLC of which Lee's probate estate is the sole owner and to contribute any part (or all) of Lee's Literary Property to such LLC. (Id.) Pursuant to that authorization, Carter created Harper Lee, LLC on April 25, 2016, and contributed and assigned to the LLC Lee and the Estate's interests in the rights that are the subject of the Arbitration Proceeding. (Id.)

On June 18, 2018, arbitrator Silberberg issued a Partial Final Award in which he ruled that the 2008 Grant superseded and replaced the grants made by Lee to the Producers in the 1961 Agreement as amended, and that the 2008 Grant conveyed certain rights in TKAM to the Producers. (Id. at 7; Doc. 1-3). Further issues were outlined for continued proceedings if the Parties to the Arbitration Proceeding so desired. (Doc. 1 at 7). Following issuance of the Partial Final Award, the parties engaged in settlement negotiations, and eventually agreed to settle all claims submitted to the Arbitration Proceeding through a settlement agreement reached on December 23, 2021. (Id.) The Settlement Agreement and Mutual Release

expressly provided that the Agreement itself, along with the earlier Partial Final Award, would constitute the Final Arbitration Award.  (Id.; Doc. 1-4 at 6-22).

On January 20, 2022, the Final Arbitration Award Upon Consent of the Parties issued by the American Arbitration Association and the Arbitrator, expressly incorporating the December 23, 2021 Settlement Agreement and June 18, 2018 Partial Final Award, as collectively constituting the Final Award. The 2008 Grant is Exhibit 2 to the Final Award. (Doc. 1-4 at 1-5 (Final Arbitration Award); Doc. 1-4 at 6-66 (Settlement Agreement)). Of note, Paragraph 13 of the Settlement Agreement provides that the Agreement, and the Final Award into which it is incorporated, may be confirmed in this Court, pursuant to 9 U.S.C. § 9 and that the parties will object to such confirmation:

> ... This Agreement and the Partial Final Award it references shall be the Final Arbitration Award rendered by the arbitrator in this arbitration. Once the arbitrator renders a Final Arbitration Award pursuant to this arbitration as provided herein, the Parties agree that at any time within one year after the award is made, any Party to the arbitration may apply to the United States District Court for the Southern District of Alabama for an order confirming the award pursuant to 9 U.S.C.§ 9, and further agree that no Party will object to such confirmation of the arbitration award as a judgment. The Parties acknowledge that their mutual acceptance of this Agreement is conditional on said arbitrator's entry of an arbitration award as described herein.

(Doc. 1-4 at 12-13 at ¶13).

The Final Arbitration Award Upon Consent of the Parties has not been vacated under 9 U.S.C. § 10 or modified or corrected under 9 U.S.C. § 11.  On February 9, 2002, pursuant to 9 U.S.C. § 9, Petitioners filed the present Petition to Confirm within one (1) year of the date of the Arbitration Award.  In the Petition, Petitioners seek confirmation of the arbitration award per 9 U.S.C. § 9, and request that a judgment be entered under the *Federal Arbitration Act*, 9 U.S.C. § 13.  (Doc. 1).  On February 23, 2002,

4

the Respondents filed a response, stating there was no opposition per Paragraph 13 of the Settlement Agreement and the binding arbitration. (Doc. 15).[1]

## II.     Discussion

Petitioners seek an order from this Court under the *Federal Arbitration Act* (FAA), 9 U.S.C. § 9, confirming the January 20, 2022 Final Arbitration Award Upon Consent of the Parties (Final Award) as well as and a judgment thereon pursuant to 9 U.S.C. § 13.

As summarized in Nelson v. Jackson, 855 Fed. Appx. 653, 653-654 (11th Cir. 2021):

> The Federal Arbitration Act ("FAA") permits "parties to arbitration agreements to bring a separate proceeding in a district court to enter judgment on an arbitration award once it is made." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *see* 9 U.S.C. § 9. But the Act does not create federal subject-matter jurisdiction on its own; "[i]nstead, the FAA requires an independent jurisdictional foundation." *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016); *see Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). Thus, "[t]he district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *PTA-FLA, Inc.*, 844 F.3d at 1305 (quotation marks omitted).

Additionally, when parties to arbitration "have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court," then any party may apply to the court specified or the district court where the award was made for an order confirming the award within a year. 9 U.S.C. § 9. If made within a year, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in section[s] 10 and 11." Id. "There is nothing malleable about [the] 'must grant' [language in the FAA] which unequivocally tells the courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." Hall St. Assoc., L.L.C. v. Mattel, Inc., 552 U.S.

---

[1] Respondents added that the Settlement Agreement's Disclaimer of Liability -- "Paragraph 14.1 [] [--] ... and non-opposition to ... [the] application to confirm the Final Award, does not constitute an admission of any liability or wrongdoing whatsoever[]" adding that they "neither admit nor deny any of the allegations contained in ...[the] Petition." (Doc. 15 at 2 (citing Doc. 1-4 at 13 at ¶14.1)).

576, 587 (2008). There is a presumption "that arbitration awards will be confirmed, and judicial review of an arbitration award is narrowly limited." Rosenweig v. Morgan Stanley & Co., Inc., 494 F.3d 1328, 1333 (11th Cir. 2007).

### A.     Timeliness

The Final Arbitration Award issued on January 20, 2022. (Doc. 1-4.) The Petition to Confirm this arbitration award was filed on February 9, 2022, within the one-year timeframe, pursuant to 9 U.S.C. § 9. (Doc. 1). Additionally, Paragraph 13 of the Settlement Agreement states that "the Parties agree that at any time within one year after the [arbitration] award is made, any Party to the arbitration may apply to the United States District Court for the Southern District of Alabama for an order confirming the award pursuant to 9 U.S.C. § 9." (Doc. 1-4 at 12).  Thus, Petitioner's petition to confirm is timely.

### B.     Jurisdiction

The FAA allows a party to apply to the court to confirm an arbitral award. 9 U.S.C. § 9, 10. However, this authorization does not grant a federal court subject matter jurisdiction; a federal court must have an "independent jurisdiction basis." Mattel, Inc., 552 U.S. 576 at 582. "Subject matter jurisdiction for cases filed pursuant to § 9 of the Act must be based upon either diversity of citizenship or the existence of a federal question upon either diversity of citizenship or the existence of a federal question and is not dependent upon the location in which the arbitration was made." Loral Corp. v. Swiftships, Inc., 77 F.3d 420, 422 (11th Cir. 1996). See also e.g., Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997) (finding that the FAA "does not confer subject matter jurisdiction on federal courts. Instead, federal courts must have an independent jurisdictional basis to entertain cases arising under the FAA"); Loral Corp. v. Swiftships, Inc., 77 F.3d 420, 422 (11th Cir. 1996) ("Subject matter jurisdiction for cases filed pursuant to § 9 of the Act must be based upon either diversity of citizenship or the existence of a federal question and is not dependent upon the location in which the arbitration award was made.")

As alleged in the Petition: Atticus Corporation is a corporation organized and existing under the laws of the State of California, with its principal place of business located in the State of California (Doc. 1 at 2; Doc. 1-5 at 1); Hannah C. Pakula is a citizen of the State of New York (Doc. 1 at 2); Boardwalk Productions is a corporation organized and existing under the laws of the State of California, with its principal place of business in the State of California (Id.); Tonja B. Carter is a citizen of the State of Alabama and is the duly appointed representative of the Estate of Nelle Harper Lee (Id.); and Harper Lee, LLC, is a limited liability company organized under Alabama law, and its sole member is the Estate of Nelle Harper Lee. (Id.) Additionally, as alleged in the Petition, the amount in controversy exceeds $75,000 as the Final Arbitration Award exceeds this sum: "[t]he Settlement Agreement further provided for the payment of a Settlement Payment to be made by the Lee Estate to the Producers in an amount in excess of the jurisdictional amount in controversy required under 28 U.S. Code § 1332 (Final Award, Exhibit D hereto, Settlement Agreement [attached to Final Award as Exhibit 1], Paragraph 6)." (Doc. 1 at 12 at ¶36; Doc. 1-1; Doc. 1-4). Thus, this Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997) (finding that the FAA "does not confer subject matter jurisdiction on federal courts. Instead, federal courts must have an independent jurisdictional basis to entertain cases arising under the FAA"); Loral Corp. v. Swiftships, Inc., 77 F.3d 420, 422 (11th Cir. 1996) ("Subject matter jurisdiction for cases filed pursuant to § 9 of the Act must be based upon either diversity of citizenship or the existence of a federal question and is not dependent upon the location in which the arbitration award was made.")

The Court has personal jurisdiction over Respondent Carter because she is a resident in this District and is the Personal Representative for the Estate of Nelle Harper Lee, pending in the Probate Court of Monroe County, Alabama, which is also situated in this District. This Court has personal jurisdiction over Harper Lee, LLC, as its sole member is the Estate of Nelle Harper Lee which is the subject of a probate

proceeding before the Probate Court of Monroe County, Alabama, which is within this District, and as Carter is the Personal Representative for such Estate. The exercise of jurisdiction over the parties will not violate due process because the Final Award and the Parties' underlying Settlement Agreement both expressly provide for this confirmation action to be filed within this District.

Additionally, the FAA states that "[n]otice of the application [to confirm an arbitration award] shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding." 9 U.S.C. § 9. The FAA also provides that if the adverse party is not a resident of the district within which the award was made, then "notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." 9 U.S.C. § 9.

The Will of Nelle Harper Lee was filed on or about February 29, 2016 in the Probate Court of Monroe County, Alabama. (Doc. 1 at 6.) The Probate Court of Monroe County, Alabama is in the Southern District of Alabama. (Id. at 3.) Carter is a resident of the Southern District of Alabama and serves as the Personal Representative of Lee's estate which is in this District. (Doc. 1 at ¶ 9). Harper Lee, LLC's sole member, the Estate of Nelle Harper Lee, is also within this District. (Id.)

As to the district in which the award was made, the arbitration appears to have been conducted over telephone by the American Arbitration Association Commercial Arbitration Panel from New York. (Doc. 1-2; Doc. 1-4). The Final Award (incorporating the Settlement Agreement) indicates that the Arbitrator was located in New York, Respondent Carter's address was in Monroeville, Alabama at the time; and Petitioner's counsel's addresses were in California. (Doc. 1-4 at 15). It appears that the Award was ultimately transmitted from New York to Alabama. According to the address and information provided to the Court, Respondent Carter is a resident of Monroeville, Alabama. As such, Respondent

8

Carter is not a resident of any district which could be deemed as the district where the award was made by the Panel.

Respondent Carter was served with the Petition (Summons and Complaint) by service issued from this Court by a private process server. (Doc. 3). As such, Respondent Carter was not served by the U.S. Marshal per 9 U.S.C. § 9. Nevertheless, courts have held that the phrase "in like manner as other process of the court" found in Section 9 includes service pursuant to Rule 4 of the Federal Rules of Civil Procedure. The Round Table Franchise Corporation v. Pizza Bytes, Inc., 2020 WL 10221070 (N.D. Ga. 2020) (collecting cases). Thus, Respondent Carter was properly served. Fed. R. Civ. P. 4(h) (Serving a Corporation, Partnership, or Association).[2]

**C.     Venue**

Venue is proper where the arbitration award was made or in any district that would be proper under 28 U.S.C. § 1391. 9 U.S.C. § 9; Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193, 195 (2000). Under 28 U.S.C. § 1391(b)(1), "a civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Paragraph 13 of the Settlement Agreement states that "the Parties agree that at any time within one year after the award is made, any Party to the arbitration may apply to the United States District Court for the Southern District of Alabama for an order confirming the award." (Doc. 1-4 at 12). The Arbitration Award was made on January 20, 2022. (Doc. 1-4.) On February 9, 2022, within a year of the date the arbitration award was made, Petitioners filed this Petition in the United States District Court for the Southern District of Alabama. (Doc. 1). Under 28 U.S.C. § 1391(b)(1), venue is proper in the Southern District of Alabama. All Respondents are residents of the State of Alabama. (Doc. 1 at 2). Due to all Respondents residing in

---

2 See also Fed. R. Civ. P. 4(k) ("Territorial Limits of Effective Service. (1) *In General.* Serving a summons ... establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]").

the same state, "the action may be brought in a district in which any defendant resides." 28 U.S.C. § 1391(b)(1). Respondent Carter is a resident of the Southern District of Alabama (Doc. 1 at ¶ 9);thus, venue is proper in this District.

Additionally, venue is proper in the Southern District of Alabama under 28 U.S.C. § 1391(b)(2). This is because the Final Award and the Parties' underlying Settlement Agreement (incorporated within the Final Award) both expressly provide for this confirmation action to be filed within this District, and the Respondent (and the pertinent probate estate) is a resident of this District. Additionally, a "substantial part of the events or occurrences giving rise" to the claims in the arbitration occurred in Monroeville, Alabama and the property that is the subject of the action (literary works -- novel and motion picture) were created in Monroeville, Alabama. 28 U.S.C. § 1391(b)(2). See Trehel Corp. v. W.S. Agee Grading Contractor, Inc., 2012 WL 1080586, at *3, n.2 (N.D. Ga. Mar. 30, 2012) (finding that venue was proper in the Northern District of Georgia for confirmation of an arbitration award because "a substantial part of the events or omissions giving rise to Trehel's claim occurred within this district and division") (citing Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 195 (2000)) (holding that the venue provisions in 9 U.S.C. § 9 are permissive and permit a motion to confirm an arbitration award to be brought "either where the award was made or in any district proper under the general venue statute."). Thus, venue is proper in the Southern District of Alabama.

D.   **Analysis**

The FAA applies when there is a "written provision in ... a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy arising out of such contract...." 9 U.S.C. § 2. Section 9 of the FAA (9 U.S.C. § 1, *et seq.*) governs confirmation of an arbitrator's award and provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any

> time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon **the court must grant such an order** unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9 (emphasis added). See also Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1322 (11th Cir. 2010) ("... the court *must* confirm[ ]" (emphasis in original)). "There is nothing malleable about [the] 'must grant' [language in the FAA] which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." Hall St. Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008). Moreover, "[b]ecause arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law.' " AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007) (quotations omitted). As a result, "[t]here is a presumption under the FAA that arbitration awards will be confirmed[.]" Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1321 (11th Cir. 2010) ("... the court *must* confirm[ ]" (emphasis in original)); Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1288 (11th Cir. 2002) (the FAA "imposes a heavy presumption in favor of confirming arbitration awards."). Thus, "federal courts should defer to an arbitrator's decision whenever possible." Floridians for Solar Choice, Inc. v. Paparella, 802 Fed. Appx. 519, 521 (11th Cir. 2020) (citation omitted)

Moreover, courts may vacate an award only in the four "very unusual circumstances" set forth in 9 U.S.C. § 10(a). Id. at 4. The four (4) Section 10 "very unusual circumstances" are as follows: 1) the award was procured by corruption, fraud, or undue means; 2) there was evident partiality or corruption in the arbitrators, or either of them; 3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or 4) the

11

arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(1-4).

Further, the Court's review would *still* be limited if a party argued the arbitrator exceeded his powers or applied rules inconsistent with applicable law (a Section 10(a)(4) challenge):

> .... When parties agree to arbitrate their disputes, they "opt out of the court system" and thus, have limited avenues for relief in federal court. Gherardi, 975 F.3d at 1238. .... "in § 10(a)(4) cases, our review is quasi-jurisdictional: a check to make sure that the arbitration agreement granted the arbitrator authority to reach the issues it resolved." Id.; ..... "Only if the arbitrator acts outside the scope of his contractually delegated authority -- issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract -- may a court overturn his determination." Sutter, 569 U.S. at 569 ... (quotations and alterations omitted). That an arbitrator committed an error (even a serious error) will not warrant vacatur under section 10(a)(4). Id. ...
>
> ***
>
> ... Whether the Panel applied its rules consistent with "applicable law" or in an arbitrary manner are legal questions that are beyond the limited scope of our judicial review. See White Springs, 660 F.3d at 1283 (declining to address arguments that the arbitration panel exceeded its power by awarding fees prohibited by federal and state law: the courts "cannot ... review the panel's award for underlying legal error."); Frazier, 604 F.3d at 1324 (concluding that arbitrariness is no basis for vacatur: the statutory grounds set forth in 9 U.S.C. § 10 are exclusive)....
> Torres, 839 Fed. Appx. at 333-334. See also Gherardi v. Citigroup Global Markets, Inc., 975 F.3d 1232, 1238 (11th Cir. 2020); Barclays Capital Inc. v. Urquidi, 786 Fed. Appx. 970, 973 (11th Cir. 2019).

The takeaway then, is that "[t]here is a presumption under the FAA that arbitration awards will be confirmed[.]" Frazier, 604 F.3d at 1321. "Courts are careful not to exceed this limited scope of review in order to preserve the efficiency and reliability of arbitration proceedings[.]" J.A. Jones Const. v. Flakt. Inc., 731 F. Supp. 1061, 1063 (N.D. Ga. 1990). See also Rosenweig v. Morgan Stanley & Co., Inc., 494 F.3d 1328, 1333 (11th Cir. 2007) (the FAA "presumes that arbitration awards will be confirmed, and judicial review of an arbitration award is narrowly limited[ ]"); B.L. Harbert Intern., LLC v. Hercules Steel Co., 441 F.3d 905, 910 (11th Cir. 2006), *abrogated on other grounds by* CM S. E. Texas Houston, LLC v. CareMinders Home Care, Inc., 662 Fed. Appx. 701 (11th Cir. 2016)(discussing the court's limited

12

review); Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc., 146 F.3d 1309, 1312-1313 (11th Cir. 1998) (same). Indeed:

> a motion to confirm an arbitration award is very nearly like asking a court to recognize and enforce the judgment of a different court. In that context, so long as the rendering court had jurisdiction, 'the court in which execution is sought will not look behind the judgment and reopen the case on the merits.' Jack H. Friedenthal, Mary Kay Kane, Arthur R. Miller, *Civil Procedure* § 15.7 (5th ed. 2015); *see also V.L. v. E.L.*, –– U.S. ––, 136 S. Ct. 1017, 1020 ... (2016) (recognition of judgment not required if rendering court did not have jurisdiction) Gherardi, 975 F.3d at 1237-1238

In this case, both parties seek confirmation of the arbitration award, there are no unusual circumstances prohibiting same, and no party seeks to vacate, modify, or correct the award. There is also no challenge to the arbitration award, much less a Section 10(a)(4) challenge. This means that this Court cannot look behind the arbitrator's ruling and reopen the case on the merits, but rather, must in a more routine or summary fashion, confirm the award. Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1288-1289 (11th Cir. 2002).

**III.    Conclusion**

Thus, upon consideration of the foregoing, it is **ORDERED** that the Petitioner's Petition to Confirm Arbitration Award (Doc. 1) is **GRANTED,** and the January 20, 2022 Final Arbitration Award (Doc. 1-4) is hereby **CONFIRMED.**[3]

Confirmation will be formalized via entry of a separate Judgment.

**DONE** and **ORDERED** this the **19th** day of **August 2022.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

3 The arbitration award was a substantive legal award, not an award which awarded damages and/or interest.  Additionally, the Settlement Agreement amount was redacted from the Court's copy and thus, there is no information before the Court as to same. (Doc. 1 at 8 at note 1; Doc. 1-4 at 10). As such, the undersigned's confirmation is similarly limited. Moreover, despite reference to a motion to file the *unredacted* Settlement Agreement under seal "being filed contemporaneously with this Petition[]" id., the motion was filed but denied as Respondents had not yet appeared in the case.  (Docs. 5, 9).